THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM CICCIA, Defendant-Appellant.

First District (4th Division)   No. 1—90—0411

Opinion filed September 30, 1992.

Joseph N. DiNatale, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Sheila Macmanus, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, William Ciccia, was charged (as was codefendant Leonard Cerniglia) with one count of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2) of a Dominick's grocery store in Chicago. Defendant was also charged with one count of unlawful use of a firearm by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1). The State nol-prossed this count. The court denied defendant's motions to quash arrest and suppress evidence, and to suppress identification testimony.

Defendants' cause was not severed. Cerniglia, tried by the court, was acquitted. Defendant was convicted by the jury and the court sentenced him to a term of 20 years in the Illinois Department of Corrections. Defendant's motion for a new trial was denied. This appeal followed.

On appeal, defendant contends that (1) the trial court erred in denying his motion to quash arrest and suppress evidence (including identification); (2) he was not proved guilty beyond a reasonable doubt; and (3) he was denied a fair trial because of the following trial errors which alone or cumulatively prejudiced the jury against him: (a) improper admission of weapons; (b) improper use of a police sketch against him; and (c) prejudicial prosecutorial comment during closing argument.

We affirm.

At about 8 p.m. on March 29, 1988, defendant, dressed in pajamas, went to answer the door of his two-flat apartment building. The police were at the door. Defendant testified that one of the policemen showed him a badge while the other pushed him back and brought out a shotgun from under his trench coat. The officer kept the gun pointed at defendant's feet and pushed him toward the stairway. Further, defendant testified that when he asked for an explanation, the officer stated: "Shut up, shut up, you know what is going on." While the gun was still pointed at his legs, defendant was forced to walk upstairs past his father's apartment to his own on the second floor.

Next, defendant testified that he was forced to open his apartment door. Further, he testified that when he asked to see a warrant the officers responded: "We don't need a warrant, you know what happened." Defendant was then told to get dressed, and the officer with the shotgun followed him into the bedroom.

Defendant testified that the officer searched his dresser drawers without his consent and found a .9 millimeter automatic gun. Defendant told the officer that he was holding it for a friend. The officer also found a shotgun in the closet registered to defendant's wife. After defendant had finished dressing, he was handcuffed and placed in the squad car.

The witness stated that neither he nor his wife was ever shown a search warrant. He further testified that initially no consent was given for the officers to search the house or the garage. After being transported to the police station, defendant signed a consent form for the search of the garage but never for the apartment building.

Officer Neal Jack testified for the State. He stated that he and three other officers surveilled defendant's residence for approximately 2½ hours before entering the building. Defendant was already talking with two other officers when Officer Jack and a fellow officer reached the building. Then, at defendant's request, he and the other three officers proceeded upstairs. Officer Jack testified that "[h]e [defendant] didn't want to discuss anything in the hall because his parents lived on the first floor and he said his father was elderly and had been ill and he didn't want to disturb him."

Defendant was informed that a photograph identification had been made of him and that he needed to accompany the officers to the station to participate in a lineup. At that point, he was advised of his rights. Officer Jack testified that while defendant was changing his clothes the officers observed a semi-automatic handgun on top of the dresser in the bedroom. Consistent with defendant's testimony, Offi-

cer Jack stated that defendant told them he was holding the gun for a friend. When asked about other weapons, defendant said there was a shotgun on the shelf in the bedroom closet.

After the shotgun was recovered, defendant was taken downstairs and put into a squad car. Since it was unclear who owned the handguns, and no one could produce any registration, defendant's wife was also placed under arrest at that time.

The robbery occurred in the middle of the day at a grocery store. David Hobo was robbed at shotgun point around 2:15 or 2:30 p.m. on March 28, 1988, at a Dominick's located at Devon and Nagel in Chicago. Detective Hugh Conwell was assigned to the case on the same day. He was given information on the pick-up truck in which the offenders fled the scene. It was reasonable to believe that the two people who took the truck were the same two people who committed the armed robbery.

Anthony Gaspatione, Dominick's store manager that day, was unable to identify defendant as the robber in a lineup or in photographs. Despite defense objections, the State on cross-examination elicited that the witness described the individual with a shotgun to a police sketch artist. The sketch was made the day after the robbery.

Cheryl Calandrino was working at Dominick's customer service desk on the day of the robbery. She was able to describe a man with a shotgun who stood about 15 feet from her. The defense claims defendant did not look like the man described.

Salvatore Muffoletto, a pharmacist technician, was employed at Edfors Irving Park Pharmacy for 14 years and had known defendant for all of these years. He testified that on the day of the robbery defendant and his father entered the store sometime between noon and 2 p.m. The witness stated that they stayed in the store talking to the owner for another 20 to 25 minutes. Other witnesses, including defendant's mother, testified as to defendant's whereabouts at the time of the robbery.

Defendant also testified as to his whereabouts on the day of the robbery. He spent the morning downtown with his father and then took a quick trip to the grocery store with both of his parents. After dropping them off at home, he went to eat at "Chitchat and Crackers," a restaurant located about five minutes from his home. He testified that he arrived at the restaurant around 2 p.m. and stayed there for 1 to 1½ hours before going home. The witness stated that his father has Alzheimer's disease. He denied committing the robbery and stated that he had never been in the Dominick's on Nagel and Devon.

In closing argument, the prosecutor referred to defendant's failure to call his wife as a witness. The court overruled the motion by the defense for a mistrial. A guilty verdict was given by the jury, and defendant was sentenced to a term of 20 years in the Illinois Department of Corrections.

Defendant's first argument on appeal is that his conviction was improper and that the court should have granted his motion to quash arrest and suppress evidence. This panel has stated that the factors to be considered in determining whether a warrantless arrest of a defendant would be permitted due to exigent circumstances are as follows:

> "(1) whether a grave offense, particularly a violent crime, is involved; (2) whether there is a clear showing of probable cause; (3) the existence of a strong reason to believe the suspect is present; (4) the likelihood of escape absent a prompt arrest; and (5) whether the police entry was peaceable. [Citation.] These and other factors cited by the courts, however, are only guidelines, with the overall consideration being the reasonableness of the police action in light of what they knew." *People v. Knight* (1985), 139 Ill. App. 3d 188, 192-93.

■ On balance, the determining factors support the determination that exigent circumstances did exist. First, this was a violent crime of armed robbery. Somewhere between 50 to 75 people were in his vicinity as he stood wielding a shotgun. It was clear that the suspects were armed. Several witnesses had described the weapon. After defendant and Cerniglia had been identified, the police investigated and found the home addresses for both suspects. Surveillances were set up at both addresses. A computer check showed that a Chevrolet with a current license plate was registered to defendant or his wife. Detective Jack believed that he observed that automobile at defendant's address. Thus, defendant had a clear means to quickly escape. There is no evidence of a violent entry into defendant's home. We therefore agree with the finding of the trial court that there were exigent circumstances supporting the warrantless arrest of defendant.

■ Defendant argues that the initial entry into his dwelling was nonconsensual and therefore the evidence recovered should have been suppressed. Yet, the record indicates that there was testimony contrary to this argument. In the face of conflicting evidence, it is the function of the trier of fact to ascertain the truth. (*People v. Hammond* (1970), 45 Ill. 2d 269.) Defendant himself testified that he heard the doorbell, looked through the peephole and opened the door. Detective Jack testified that before the police were able to state their

purpose, the defendant asked them to follow him. He indicated that he wanted to go to the second floor so as not to disturb his parents, who lived on the first floor.

There is no question that the police were visibly armed when they came to defendant's dwelling. Yet, as defendant led them upstairs, the officer who was directly behind him did not have his shotgun drawn. Defendant was asked to describe the manner in which the shotgun was displayed. He answered that the officer "kind of had it pointed down at my feet." The colloquy between the prosecutor, Mr. Shultz, and Detective Jack went as follows:

"Q. So then you know that one of the officers was carrying a shotgun and in fact he was showing that shotgun when you and the detectives saw Mr. Ciccia, isn't that right?

A. What do you mean by showing counsel?

Q. Well, you had the shotgun visible where the defendant could see it?

A. Yes, sir.

Q. Now would you consider that to be a position where the weapon is drawn?

A. Not with a shotgun, no."

A consensual search does not require a warrant or probable cause. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043-44.) Consent is determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227, 36 L. Ed. 2d at 863, 93 S. Ct. at 2048.

Officer Jack testified that defendant was told he had been identified from a photograph as a participant in an armed robbery. Defendant was then advised of his rights. Detective Jack and a fellow officer followed him into the bedroom while he changed into some clothes. At that point the officers observed the handgun on top of the dresser in the bedroom. Defendant also informed them about the shotgun in the bedroom closet. Officer Jack further testified that this gun fit the description of the shotgun used in the crime. This evidence was gathered as a result of a warrantless entry with consent.

Given the facts presented, the trial court found that both the entry and search were consensual. Thus defendant's motion to suppress was denied. A court of review will not disturb a trial judge's decision on a motion to quash an arrest and suppress evidence unless it is found to be manifestly erroneous. (*People v. King* (1991), 218 Ill. App. 3d 248, 252.) We agree with the decision of the trial court and do not find it to be manifestly erroneous.

Defendant's second contention on appeal is that he was not proven guilty beyond a reasonable doubt. To support his contention, he claims that two eyewitnesses failed to identify him. Defendant argues that he is a victim of mistaken identity. The standard of review to be used in challenges to the sufficiency of the evidence is as follows:

> " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Young* (1989), 128 Ill. 2d 1, 49, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.

There were three positive identifications given of defendant as the offender. Diane Konczyk, Joseph Pascente, and Nick Sarno all testified as occurrence witnesses. It has been established by our supreme court that "the identification testimony of a single eyewitness is sufficient to sustain a conviction." *People v. Hayes* (1990), 139 Ill. 2d 89, 147.

Ms. Konczyk, Mr. Pascente and Mr. Sarno all testified that they identified defendant out of a six-person lineup. The testimony of all three witnesses described defendant as holding a shotgun on the armored guard. There was also witness identification based on the police sketch. Store manager Gaspastione identified the actual shotgun used in the robbery.

Besides his own testimony, defendant argues that there was convincing alibi evidence from other witnesses. It is clear that the witnesses who testified as to defendant's whereabouts on May 28, 1988, were not related to him. However, the record indicates that Helen and Earl Jones, who testified as to defendant's activities at the time of the robbery, had been friends of his for quite some time.

At the time of trial, Helen and Earl Jones owned a restaurant called "Chitchat and Crackers," located on West Grand in Chicago. Mrs. Jones testified that she and her husband had owned the restaurant for about eight years. She further testified that she had known defendant, whom she and her husband referred to as "Billy," for 10 to 12 years. Mrs Jones testified that defendant arrived at the restaurant around 2 p.m. When asked how long he stayed, she replied, "[a] good hour, hour and a half."

■ Defendant cites cases such as *People v. Gardner* (1966), 35 Ill. 2d 564, *People v. Laurenson* (1971), 131 Ill. App. 2d 2, *People v. McGee* (1961), 21 Ill. 2d 440, and *People v. Hister* (1975), 60 Ill. 2d

567, to support his contention that the eyewitness identification was not sufficient to convict him beyond a reasonable doubt. Yet, these cases involved blatantly inconsistent testimony, questionable identification procedures, solid alibis, and witnesses never having a clear look at the assailant. In this case, the identification testimony was consistent. Both photographs and lineups were used to identify defendant. Finally, the alibi testimony concerning the time of the robbery was given by long-time friends of defendant.

Our supreme court has held the following:

> "The credibility of witnesses is for the jury to assess, and a court of review will not set aside a jury's verdict unless the evidence presented at trial is so improbable as to raise a reasonable doubt of guilt." (*People v. Richardson* (1988), 123 Ill. 2d 322, 353.)

Here, the jury found the testimony of the detectives to be more credible. Viewing the evidence in the light most favorable to the prosecution (*People v. Young* (1989), 128 Ill. 2d 1, 49), we find that the trial court properly found defendant guilty beyond a reasonable doubt of the offense of armed robbery.

Defendant's final argument on appeal is that he was denied a fair trial because several trial errors, considered alone or cumulatively, prejudiced the jury against him. The errors defendant alleges are improper admission of weapons, improper use against him of a police artist's sketch of the alleged assailant, and a prejudicial comment by the prosecutor in closing argument.

■ Specifically, defendant contends that the admission of the two weapons not related to the charge was prejudicial. We agree that it was error to admit into evidence weapons and other items unrelated to the charge. However, in light of the overwhelming evidence of defendant's guilt, we find that this error does not constitute a basis for reversal.

Here there were three eyewitness identifications of defendant. All described him as wielding a shotgun. There were also four witnesses who positively identified the shotgun found in defendant's bedroom closet. A court of review must consider the trial record in its entirety and ignore harmless error, including some constitutional violations. (*People v. Schmitt* (1989), 131 Ill. 2d 128, 140.) Looking at the totality of the evidence in the record, we find that any prejudice to defendant as a result of the admission of unrelated weapons does not warrant a reversal.

Next, we examine defendant's claim that the police artist sketch of the alleged assailant was used in violation of his right to confronta-

tion. Defendant argues that the police sketch and related testimony should not have been admitted into evidence. Current law no longer requires an in-court identification to corroborate an out-of-court identification. (*People v. Holveck* (1990), 141 Ill. 2d 84, 104.) The applicable portion of the statute provides:

"Substantive Admissibility of Prior Identification. A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." Ill. Rev. Stat. 1987, ch. 38, par. 115—12.

See *Holveck*, 141 Ill. 2d at 104.

■ Mr. Pascente testified at trial that he went to view a lineup at the police station on March 30, 1988, the day after the armed robbery. The witness further testified that he identified defendant out of a six-person lineup. He also stated that defendant was the man carrying the shotgun. He was also cross-examined by defense counsel. Mr. Pascente was able to identify defendant after perceiving him. Thus, according to the statute, both the police sketch and the applicable testimony are admissible. Further, the prosecutor's reference to it was appropriate. See Ill. Rev. Stat. 1987, ch. 38, par. 115—12.

■ Finally, defendant contends that the prosecutor's comment during closing argument regarding defendant's failure to have his wife testify was prejudicial. Defendant's wife invoked her fifth amendment privilege against self-incrimination. The trial court sustained her position and the State would not grant immunity. It was then agreed that the court would inform the jury that Mrs. Ciccia would be withdrawn as a witness pursuant to the court's ruling.

A prosecutor is afforded much latitude in the closing argument. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322.) Here, the State argued as follows:

"And let's talk about calling witnesses and fair play. According to the defendant, his wife's a witness. He went home, he talked about what he did all morning with his father, his mother shopping, this and that, I went home, I was with my parents. Understandably his father is somewhere else, he can't be here. But his mother came in and testified, yeah, I was with him, and other people that met him that morning came in [*sic*] he said I went home, met my wife, my wife was still there. Did they call her? Have you heard from her?"

Though we agree that the prosecutorial comment in this instance was improper, it does not constitute reversible error due to the over-

whelming evidence of defendant's guilt, and it was not so prejudicial that it materially contributed to defendant's conviction. *People v. Terry* (1984), 99 Ill. 2d 508, 517.

In this case there was positive identification of defendant by several witnesses. There was also positive identification of the shotgun brandished by defendant during the armed robbery. Given the overwhelming evidence of defendant's guilt, the cumulative effect of the two errors at trial does not constitute reversible error.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and McMORROW, JJ., concur.