(No. 79571

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FREDDIE FALASTER, Appellant.

*Opinion filed May 31, 1996.—Rehearing denied September 30, 1996.*

HARRISON, J., joined by McMORROW, J., specially concurring.

Todd D. Lambert, of Lambert & Beggs, and Bruce D. Stewart, all of Harrisburg, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael L. Wepsiec, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris and Gerry R. Arnold, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Jackson County, the defendant, Freddie Falaster, was convicted of two counts of aggravated criminal sexual assault, one count of criminal sexual assault, and one count of unlawful distribution of harmful material. The trial judge sentenced the defendant to various terms of imprisonment for those offenses. The appellate court affirmed the defendant's convictions and sentences. 273 Ill. App. 3d 694. We allowed the defendant's petition for leave to appeal (155 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The defendant makes no challenge to the strength of the evidence used to convict him on the charges, and therefore only a brief summary of the trial testimony is necessary. The victim in this case, A.F., was the defendant's daughter. According to the testimony of the victim, who was 14 years old at the time of the defendant's trial, in 1994, the defendant began sexually abusing her when she was eight or nine years old; the abuse lasted until June or July 1993, when the victim reported

it to the authorities. The victim stated that the defendant initially asked her to masturbate him or perform fellatio on him; later, the defendant told her to engage in sexual intercourse. The victim testified to specific instances in which she had intercourse with the defendant. The victim also said that the defendant had given her a nude photograph of himself and a pornographic magazine called Three Way Lust.

At trial, the State also presented the testimony of Mary Williams, a registered nurse who obtained a history from the victim prior to a physical examination in August 1993. Williams testified that the victim reported that she had been sexually abused by the defendant since she was eight years old, that oral and vaginal sex had occurred, and that she had never bled as a result of that activity. Williams stated that the absence of bleeding was not unusual.

The defendant was questioned by authorities following the victim's report of the misconduct, and the defendant's statements were introduced into evidence at his trial. The defendant admitted to a police officer and an investigator from the Department of Children and Family Services (DCFS) that he had sexually abused the victim. The defendant said that he had directed his daughter to participate in masturbation, fellatio, and intercourse with him over a period of several years. The defendant initially said that they had sexual relations once or twice, then estimated that it occurred two or three times a week, and finally said that he could not be certain how many times the conduct had occurred.

The State also presented physical evidence corroborating the victim's account. A forensic serologist was able to detect deposits of semen on the carpet next to the bed in the master bedroom where, the victim said, the defendant would often ejaculate when they engaged in sexual activity. The serologist determined that the se-

men stains were consistent with the defendant's blood type. In addition, a police officer testified that the nude photograph and pornographic magazine given by the defendant to the victim were recovered from a trunk in the victim's bedroom, where she said she had kept the items.

The defendant testified in his own behalf at trial. He denied engaging in sexual activity with the victim or giving her the photograph and magazine. The defendant acknowledged that he had been questioned by a police officer and a DCFS investigator following the victim's report of the abuse, but he denied making the inculpatory statements they attributed to him. Called to testify as a defense witness at trial was Dr. Deanna St. Germaine, the physician who performed the physical examination of the victim in August 1993. Dr. St. Germaine stated that she did not find any physical evidence of sexual abuse. She also testified, however, that because of the victim's age and physical development, it would be unusual to find such evidence unless the abuse had been forceful.

Following the close of evidence, the jury returned verdicts finding the defendant guilty of two counts of aggravated criminal sexual assault, one count of criminal sexual assault, and one count of unlawful distribution of harmful material. The trial judge later sentenced the defendant to terms of 15 years' imprisonment on each conviction for aggravated criminal sexual assault, to five years' imprisonment for the conviction for criminal sexual assault, and to 364 days' imprisonment for the conviction for unlawful distribution of harmful material, with all four sentences to run concurrently. The judge also ordered the defendant to pay two fines of $100 each pursuant to sections 5—9—1.5 and 5—9—1.7 of the Unified Code of Corrections (730 ILCS 5/5—9—1.5, 5—9—1.7 (West 1994)), and to pay $2,000 toward

counseling costs incurred by the victim, as authorized by section 5—5—6(g) of the Unified Code of Corrections (730 ILCS 5/5—5—6(g) (West 1992)).

The appellate court affirmed the defendant's convictions and sentences. 273 Ill. App. 3d 694. The court rejected the defendant's arguments that the trial judge improperly excluded several spectators from a portion of the proceedings, that the judge erred in permitting nurse Williams to testify to the victim's identification of the defendant as her abuser, and that the judge erred in asking a question of a prosecution witness. We allowed the defendant's petition for leave to appeal (155 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The defendant renews here the three allegations of error he raised in the appellate court. The defendant first contends that the trial judge improperly excluded certain spectators from the courtroom during the testimony of the victim. The persons excluded from the courtroom by the judge's order were two nephews of the defendant and the grandfather of one of the nephews. In granting the State's request that the persons be excluded, the judge invoked section 115—11 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—11 (West 1992)), which permits the exclusion of certain spectators from the court during testimony of a minor victim in specified prosecutions.

The defendant argues that this partial closure of the proceedings during the victim's testimony violated his federal and state constitutional rights to a public trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Citing *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210 (1984), *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819 (1984), and *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982), the de-

fendant contends that the exclusion order imposed in the present case failed to satisfy the limitations prescribed by the United States Supreme Court for the closing of judicial proceedings. Those cases severely limit the circumstances in which a judge may bar the press and general public from judicial proceedings. Although the defendant failed to include this contention in his post-trial motion, we will address the merits of the issue, given the general importance of the question and the division of appellate court authority on the subject. See *Hux v. Raben*, 38 Ill. 2d 223 (1967).

In excluding the three spectators from the courtroom in the present case, the trial judge relied on section 115—11 of the Code of Criminal Procedure of 1963, which provided, at the time of trial:

> "In a prosecution for a criminal offense defined in Article 11 or in Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961', where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." 725 ILCS 5/115—11 (West 1992).

The statute was applicable to the proceedings in this case, for the defendant was charged with criminal sexual assault and aggravated criminal sexual assault, violations of sections 12—13 and 12—14 of the Criminal Code of 1961 (720 ILCS 5/12—13, 12—14 (West 1992)), and the victim of the offenses was under the age of 18.

The defendant argues that the trial judge's order excluding spectators from the proceeding must satisfy not only the requirements of section 115—11 but also the more stringent limitations established by the United States Supreme Court for the closure of judicial proceedings to the press and public. The State contends that the order entered in the present case was valid if it met the statutory requirements alone. Both parties cite

*People v. Holveck*, 141 Ill. 2d 84 (1990), in support of their respective arguments. We note that the decisions of the appellate court are divided on this issue. Compare *People v. Garrett*, 264 Ill. App. 3d 1089 (1994) (exclusion order imposed under section 115—11 must also satisfy more stringent requirements limiting closure of judicial proceedings), with *People v. Benson*, 251 Ill. App. 3d 144 (1993) (exclusion order imposed under section 115—11 must satisfy only requirements of statute). We agree with the State that the trial judge's order here needed to satisfy only the requirements of section 115—11.

Although *Holveck*, a case involving an order excluding spectators pursuant to section 115—11, contains a discussion of the Supreme Court's requirements concerning the closure of judicial proceedings to the press and public, we do not believe that the opinion should be construed as imposing those requirements in cases in which an order is entered pursuant to the statute. The court observed that, "[b]y allowing the media to attend, the judge preserved the defendant's sixth amendment right to a public trial. The trial judge considered that the media presence is, in effect, the presence of the public." *Holveck*, 141 Ill. 2d at 101. The court proceeded to reject the defendant's argument that section 115—11 was unconstitutional because, among other things, it denied the defendant his right to a public trial. Discussing the provisions of section 115—11, the *Holveck* court explained:

> "The statute provides that the judge may use his discretion in connection with the exclusion of those persons who, in his opinion, are not directly interested in the case. Unlike the statute in *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (statute excluded the press and the general public), our statute is limited to discretionary closure in a criminal trial and does not allow the media to be excluded. Too, the statute provides guidelines to ensure that the

judge does not overstep the authority conferred. The statute provides that closure can be effected only in the narrow instance when a minor is testifying and it will be limited to the time when the child is testifying. The trial court properly involved section 115—11, which does not violate the constitutions." *Holveck*, 141 Ill. 2d at 102-03.

We agree with the State that the strict limitations prescribed by the United States Supreme Court for instances in which the press and public are barred from judicial proceedings are not applicable in this case. The trial judge did not close the present defendant's trial; acting pursuant to section 115—11 of the Code of Criminal Procedure, the judge instead ordered the removal of several spectators from the courtroom during the testimony of the 14-year-old victim. The persons who were temporarily excluded from the proceedings were not members of the defendant's immediate family and thus did not have a direct interest in the outcome of the case. The judge did not impose any restrictions on the media, which were still allowed full and uninhibited access to the proceedings; thus, none of the evils of closed trials are implicated in the present case. Because section 115—11 is constitutional (*Holveck*, 141 Ill. 2d 84) and because the trial judge in the present case fully complied with its requirements, we must conclude that the order excluding three spectators from the court during the victim's testimony was valid.

The defendant next argues that the trial judge erred in permitting a witness to provide hearsay evidence of the victim's identification of the defendant as her abuser. The issue arose during the testimony of Mary Williams, a registered nurse in the office of Dr. St. Germaine, who conducted an examination of the victim in late August 1993, following the victim's report of the abuse to authorities. Prior to the doctor's examination, the nurse obtained a history from the victim. Williams testified that the victim described the sexual abuse and

identified the defendant as the offender. The defendant objected to this testimony on hearsay grounds. The State cited section 115—13 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—13 (West 1992)) in support of the witness' testimony, and the trial judge overruled the defendant's objection.

At the time of the defendant's trial, section 115—13 provided:

> "In a prosecution for violation of Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961', statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

The present defendant was being tried for criminal sexual assault and aggravated criminal sexual assault, violations of sections 12—13 and 12—14 of the Criminal Code of 1961 (720 ILCS 5/12—13, 12—14 (West 1992)). The statute is a narrow codification of the common law rule permitting the hearsay use of information revealed in medical treatment. See *People v. Roy*, 201 Ill. App. 3d 166, 179 (1990).

The defendant contends that section 115—13 is inapplicable in this case and did not authorize the hearsay use of the nurse's testimony because the victim was not at the doctor's office "for purposes of medical diagnosis or treatment," as the statute requires; in the defendant's view, the victim underwent the examination solely as a means of developing evidence for use in a subsequent prosecution. We do not agree with the defendant that the diagnostic purpose of the examination would be incompatible with its investigatory function. We note, moreover, that the statute does not distinguish between examining physicians and treating physicians. See *Roy*, 201 Ill. App. 3d at 178; *People v. Rushing*, 192 Ill. App.

3d 444, 453 (1989). We conclude that the examination conducted in the present case was for a purpose within the scope of the statute.

The defendant separately contends that section 115—13 did not authorize the nurse to testify to the victim's identification of the offender because the identification was irrelevant to the victim's diagnosis and treatment. See *People v. Hall*, 235 Ill. App. 3d 418, 435 (1992); *People v. Hudson*, 198 Ill. App. 3d 915, 922 (1990); see also M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.8, at 722 (6th ed. 1994). We must reject this contention as well. We believe that, at least in the family setting, a victim's identification of a family member as the offender is closely related to the victim's diagnosis and treatment in cases involving allegations of sexual abuse, and thus we agree with those decisions that have permitted the admission of such hearsay evidence. *People v. Morgan*, 259 Ill. App. 3d 770, 781-82 (1994); see also *United States v. Renville*, 779 F.2d 430, 437 (8th Cir. 1985) ("[C]hild abuse involves more than physical injury; the physician must be attentive to treating the emotional and psychological injuries which accompany this crime. [Citations.] The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser"). As the appellate court below explained in upholding the admission of the nurse's testimony:

"Here, AF's identification of defendant was reasonably pertinent to a proper diagnosis because defendant is AF's father. Defendant was living with AF while the sexual abuse occurred. AF's physical and emotional health, now and in the future, will be affected by her relationship with defendant. Defendant is not a stranger whom AF will never see again, but he is her father. That fact was significant in diagnosing or treating AF at the time of the abuse and will remain an important fact for future treatment." 273 Ill. App. 3d at 702-03.

We believe that the nurse's testimony relating the

minor's identification of the defendant as the abuser was properly admitted under the terms of section 115—13.

In his final allegation of error, the defendant argues that the trial judge erred in asking a question of one of the prosecution's witnesses, Dr. Virginia Hoffman. Testifying in rebuttal, Dr. Hoffman, a psychologist, described the nature and characteristics of child sexual abuse accommodation syndrome. In the course of her testimony, Dr. Hoffman drew an analogy to a driver's recollection of an automobile accident. At first a driver will generally provide only a few details of the accident; as time passes, the driver will be more forthcoming and will reveal more information about the mishap. At the conclusion of Dr. Hoffman's testimony, the following colloquy ensued:

"THE COURT: I have a question, Doctor. Let's talk about disclosure. Would you expect in a situation such as a 13-year-old who is allegedly the victim of sex abuse to be more inaccurate in her initial disclosure as opposed to later disclosures?

THE WITNESS: Yes, very much. It is like the car accident example I gave.

THE COURT: Well, that's the reason I asked the question. Thank you."

The defendant notes that one of the principal issues at trial was the credibility of the victim, and the defendant contends that the court's question improperly bolstered the prosecution's argument that her testimony was truthful.

"A trial judge has the right to question witnesses in order to elicit the truth or to bring enlightenment on material issues which seem obscure." *People v. Wesley*, 18 Ill. 2d 138, 154-55 (1959). It is improper, however, for the judge to assume the role of an advocate (*People v. Hopkins*, 29 Ill. 2d 260, 265 (1963); *People v. Bernstein*, 250 Ill. 63, 67 (1911)) or to suggest through comments or questions an opinion regarding the facts of the case or

the credibility of witnesses (*People v. Marino*, 414 Ill. 445, 450 (1953)). The appropriate scope of questioning by the court depends on the facts and circumstances of the case and lies largely within the trial judge's discretion. *People v. Williams*, 173 Ill. 2d 48, 79 (1996); *People v. Nevitt*, 135 Ill. 2d 423, 456 (1990); *People v. Trefonas*, 9 Ill. 2d 92, 100 (1956).

Applying these principles to the case at bar, we do not believe that the trial judge abused his discretion in asking the question of the witness. The brief inquiry helped clarify a matter that the judge, and perhaps the jurors, too, found to be somewhat obscure. The judge did not indicate by his question or his succeeding comments any view on the facts of the case or the credibility of the witnesses. Moreover, the jurors received the standard instruction directing them not to construe any of the judge's rulings or remarks as an opinion on the facts or preferred verdict in the case. Illinois Pattern Jury Instructions, Criminal, No. 1.01 (3d ed. 1992). The cases cited by the defendant in support of this contention (*People v. Rush*, 250 Ill. App. 3d 530 (1993); *People v. Brown*, 200 Ill. App. 3d 566 (1990); *People v. Crane*, 34 Ill. App. 3d 850 (1976)) are distinguishable. In each of those cases, the trial judge breached the bounds of impartiality by making remarks or asking questions that would have been construed by the jury as an opinion on the credibility of a particular witness. The trial judge in the present case, in contrast, did not comment on the strength of the evidence or the credibility of witnesses. His single question merely clarified a point that he believed had been left somewhat unclear by the witness' testimony. We cannot say on this record that the trial judge abused his discretion in asking the question of the witness.

Finding no reversible error in the trial proceedings, we decline to disturb the defendant's convictions or sen-

tences. For the reasons stated, the judgment of the appellate court, which affirmed the judgment of the circuit court of Jackson County, is affirmed.

*Judgment affirmed.*

JUSTICE HARRISON, specially concurring:

Contrary to my colleagues, I would hold that the trial judge erred in permitting nurse Williams to testify that the victim had identified defendant as her abuser. Nurse Williams' testimony was plainly hearsay. As such, it was admissible only to the extent that it fell within the hearsay exception set forth in section 115—13 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—13 (West 1992)). That exception, however, cannot be invoked here.

Section 115—13 does authorize medical personnel to testify as to statements made by a victim of sexual assault, but only when the statements were made by the victim to the medical personnel "for purposes of medical diagnosis or treatment." This is a codification of a common law rule (see *People v. Giles*, 261 Ill. App. 3d 833, 841-42 (1994)) which was based on the notion that an injured individual is presumed not to "prevaricate at the very instant of his injury or while he is stating his physical condition to a physician from whom he expects and hopes to receive medical aid" (*Greinke v. Chicago City Ry. Co.*, 234 Ill. 564, 572 (1908)).

In this case, the challenged statement was not made at the time of the victim's injury and had nothing to do with her "diagnosis and treatment." Dr. St. Germaine was not the victim's physician, and the victim did not go to her office because she needed help in identifying some medical condition so that it could be cured. The victim was taken to Dr. St. Germaine's office, accompanied by an assistant State's Attorney according to the doctor's account, for the sole purpose of bolstering the State's case against the defendant.

No genuine medical purpose can reasonably be imputed to the examination. By the time nurse Williams interviewed the victim in Dr. St. Germaine's office, any physical trauma had long since healed. There was nothing medically wrong with the victim, she had no physical symptoms requiring treatment, and she did not claim that she needed to be treated.

The interview with nurse Williams was likewise unrelated to care of the victim's mental health. While identification of the perpetrator is undeniably important in dealing with the child's psychological condition, there was no uncertainty as to who was responsible here. The victim had already identified defendant as her abuser, he had already admitted the abuse and the police had already arrested him for it.

Because the victim was examined for investigatory purposes and not to obtain medical care, the presumption of trustworthiness underlying the exception to the hearsay rule was absent and the statute, by its terms, did not apply. To hold otherwise would mean that the State could evade the prohibition against hearsay testimony in every child abuse case simply by using licensed medical professionals to conduct its interrogations. In my view, such a result was not intended by the legislature and represents a radical and unwarranted departure from established principles of evidence.

Although the circuit court should not have admitted nurse Williams' hearsay testimony, I agree that the appellate court was correct in affirming the circuit court's judgment. This court has held that reversal is mandatory when the trial court has erroneously admitted evidence unless the record clearly shows that the error was not prejudicial. *People v. Lawler*, 142 Ill. 2d 548, 562 (1991); *People v. Carlson*, 92 Ill. 2d 440, 449 (1982). I believe that the record before us does clearly show that admission of nurse Williams' testimony did not preju-

dice the defendant. As the majority's review of the facts indicates, the properly admitted evidence was so overwhelming that no fair-minded jury could reasonably have voted to acquit.

JUSTICE McMORROW joins in this special concurrence.