THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CARL W. BENSON, Defendant-Appellant.

Fourth District   No. 4—93—0069

Argued August 18, 1993.—Opinion filed September 30, 1993.

Richard D. Frazier (argued) and Michael B. Metnick, both of Metnick, Barewin, Wise & Cherry, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Beth McGann (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In August 1992, a jury convicted defendant, Carl W. Benson, of one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16). In January 1993, the trial court sentenced defendant to seven years in prison and ordered him to pay restitution. Defendant appeals, alleging that (1) the court deprived him of his right to a public trial by ordering spectators excluded during the testimony of the child victim, and (2) the court erred by ordering him to pay restitution for anticipated counseling sessions for the victim.

We affirm.

### I. Excluding Spectators From The Courtroom

In December 1991, the State charged defendant with two counts of aggravated criminal sexual abuse, alleging that he committed acts of sexual conduct against his eight-year-old granddaughter, H.B., involving H.B.'s vagina and defendant's hand. The jury convicted him of one count and acquitted him of the other.

At the start of the trial, after the prosecutor informed the trial court that H.B. would testify first, the prosecutor asked the court to clear the courtroom while H.B. testified. In support of this request, he cited section 115—11 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 115—11). That section reads as follows:

"In a prosecution for a criminal [sexual] offense *** where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." Ill. Rev. Stat. 1991, ch. 38, par. 115—11.

The defendant objected on the basis that his friends and relatives in the courtroom had an interest in the proceeding and that the court ought not grant the prosecutor's request in the absence of "extraordinary circumstances." The court then asked counsel to identify the family members present and the nature of the interest of the other spectators, as well. Defendant responded that the spectators were his sisters, brothers, nieces, nephews, and neighbors. However, defend-

ant's response was generalized; he did not identify any *particular* spectator by name or relationship. He further informed the court that neither his wife nor any of his children were present.

At that point, the court and defense counsel said the following:

> "THE COURT: So we only have collateral relatives of his at this point, right?
>
> [Defense counsel]: Yes.
>
> THE COURT: I'm going to grant the [S]tate's motion and exclude from the courtroom not only these persons who are collateral relatives, but also any other spectators from the courtroom in addition who do not have—I find that that is not a direct interest as contemplated by the statute. So the Court will clear the courtroom."

The court also stated that the spectators present lacked the direct interest contemplated by the statute. After the court ordered the courtroom cleared, defense counsel made no offer to distinguish particular family members from neighbors among the spectators.

Defendant argues that the trial court's clearing the courtroom during H.B.'s testimony deprived him of his right to a public trial under the sixth amendment to the United States Constitution (U.S. Const., amend. VI). In support of this argument, defendant cites *Press-Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819, *Waller v. Georgia* (1984), 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210, *People v. Holveck* (1990), 141 Ill. 2d 84, 565 N.E.2d 919, and *People v. Priola* (1990), 203 Ill. App. 3d 401, 561 N.E.2d 82.

Because both *Press-Enterprise* and *Waller* are distinguishable on their facts from the present case, they provide very little support for defendant's argument. *Press-Enterprise* involved a newspaper's first amendment claim that it had the right to be present during *voir dire* examination of prospective jurors. The trial court denied the newspaper's request on the ground that the privacy rights of prospective jurors might be violated. Thus, all but approximately three days of the six-week-long *voir dire* examination was closed to the public *and* the media. *Press-Enterprise*, 464 U.S. at 503-04, 78 L. Ed. 2d at 634-35, 104 S. Ct. at 820-21.

The United States Supreme Court held that this procedure violated the guarantee of open public proceedings in criminal trials. In so holding, however, the Court made clear that it was concerned about an order which excluded not only the public, but also the media from courtroom proceedings. (See *Press-Enterprise*, 464 U.S. at 509-10, 78 L. Ed. 2d at 637-38, 104 S. Ct. at 824, quoting *Globe Newspaper Co.*

*v. Superior Court* (1982), 457 U.S. 596, 606, 73 L. Ed. 2d 248, 257, 102 S. Ct. 2613, 2620, as follows: " '[T]he circumstances under which the *press* and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one.' " (Emphasis added).) *In that context* (namely, an order excluding the media from court proceedings), the Court wrote that the presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Press-Enterprise*, 464 U.S. at 510, 78 L. Ed. 2d at 638, 104 S. Ct. at 824.

*Waller* also addressed a trial court's exclusion of the media during court proceedings. Over defendant's objection. that he was being denied his sixth and fourteenth amendment right to a public trial, the trial court in *Waller* conducted a suppression hearing lasting seven days at which wiretaps were played in open court. (*Waller*, 467 U.S. at 41-43, 81 L. Ed. 2d at 35-36, 104 S. Ct. at 2212-14.) The State moved to close the suppression hearing in order to avoid breaching the expectation of privacy of persons other than the defendant who might have been recorded during the wiretaps. The court granted the motion and ordered the suppression hearing closed to all persons other than witnesses, court personnel, the parties, and the lawyers. (*Waller*, 467 U.S. at 42, 81 L. Ed. 2d at 36, 104 S. Ct. at 2213.) The Georgia Supreme Court ruled that the trial court had properly balanced the defendant's rights to a public hearing under Georgia law and the sixth amendment against the privacy rights of others. The United States Supreme Court reversed, holding that the defendant's sixth amendment right to a public trial applied to the suppression hearing and that the trial court failed to give proper weight to sixth amendment concerns. (*Waller*, 467 U.S. at 43, 81 L. Ed. 2d at 36, 104 S. Ct. at 2214.) In so holding, the Court in *Waller* cited *Press-Enterprise* and concluded that "the closure of the entire suppression hearing plainly was unjustified." *Waller*, 467 U.S. at 48, 81 L. Ed. 2d at 39, 104 S. Ct. at 2216.

In *Holveck*, the Supreme Court of Illinois addressed a situation more similar to the present case. There, the trial court granted the State's motion under section 115—11 of the Code to exclude from the courtroom those persons except the media who, in the opinion of the court, did not have a direct interest in the case. The supreme court in *Holveck* discussed *Press-Enterprise* and *Waller*, but did so in the context of reviewing a decision by the appellate court as to whether the trial judge expressed sufficient reasons to warrant closure of the trial. (*Holveck*, 141 Ill. 2d at 99-100, 565 N.E.2d at 925-26.) The supreme

court reversed the appellate court's determination that the trial judge improperly utilized section 115—11 of the Code because (according to the appellate court) the record contained insufficient evidence that "the trial judge balanced the victims' rights against the defendant's sixth amendment right to a public trial." *Holveck*, 141 Ill. 2d at 99-100, 565 N.E.2d at 925-26.

In our judgment, the supreme court in *Holveck* did *not* adopt the criteria discussed by the United States Supreme Court in *Press-Enterprise* and *Waller* when it determined that the *limited* closure of the courtroom authorized by section 115—11 of the Code does not violate the United States Constitution. In so concluding, we note the following from the *Holveck* decision:

> "In deciding the motion for closure, the judge based his decision on the effects on a young child of testifying while a large number of people were in the courtroom. In answer to the defendant's argument that, by allowing only the members of the family and other interested parties to be in the courtroom, the public was thus excluded in violation of the defendant's sixth amendment right to a public trial, the judge said that the fact that the media were present actually allowed public presence. ***
>
> *** *By allowing the media to attend, the judge preserved the defendant's sixth amendment right to a public trial.* The trial judge considered that the media presence is, in effect, the presence of the public. ***
>
> * * *
>
> *** [Section 115—11 of the Code] provides that the judge may use his discretion in connection with the exclusion of those persons who, in his opinion, are not directly interested in the case. Unlike the statute in *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (statute excluded the press and the general public), our statute is limited to discretionary closure in a criminal trial and does not allow the media to be excluded. Too, the statute provides guidelines to ensure that the judge does not overstep the authority conferred. The statute provides that closure can be effected only in the narrow instance when a minor is testifying and it will be limited to the time when the child is testifying. The trial court properly involved section 115—11, which does not violate the constitutions [of the United States or of this State]." (Emphasis added.) *Holveck*, 141 Ill. 2d at 100-03, 565 N.E.2d at 926-27.

■ We hold that because section 115—11 of the Code permits only limited closure of trial court proceedings, that section does not violate (or even implicate) any State or Federal constitutional provisions. We further hold that the criteria discussed by the United States Supreme Court in *Press-Enterprise* and *Waller* do not apply to closures ordered pursuant to section 115—11 of the Code.

■ Section 115—11 of the Code places three limitations upon the trial court's authority to close the courtroom. The first is to explicitly prohibit the court from excluding the media. That statutory provision renders the present case factually distinguishable from the circumstances in *Press-Enterprise* and *Waller*. Additionally, as the Illinois Supreme Court wrote in *Holveck*, "[b]y allowing the media to attend, [the statute] preserve[s] the defendant's sixth amendment right to a public trial." (*Holveck*, 141 Ill. 2d at 101, 565 N.E.2d at 926.) The second limitation section 115—11 of the Code places upon the trial court is to direct that the court may exclude from the proceedings *only* those persons who, in the opinion of the court, do not have a direct interest in the case; the obverse of this means that those persons who *do* have a direct interest in the case, such as a defendant's immediate family, may not be excluded. The third limitation the statute places upon the trial court is to authorize the court to exclude persons from the proceedings *only* while the victim under 18 years of age is testifying.

Given these limitations, the issue becomes which spectators may the trial court *properly* exclude from the courtroom? The answer essentially is only those spectators whose connection to the case on trial is tenuous or whose presence simply reflects their curiosity about the trial court proceedings. We hold that the "interests" of such spectators to be present in court while some child recounts in open court how he or she was the victim of sexual abuse do not suffice to render unconstitutional the protections the legislature sought to provide such child victims. The sixth amendment to the United States Constitution was meant for weightier matters, and we hold that section 115—11 of the Code does not conflict with that amendment's purpose of abolishing secret trials. The statute's explicit commands that the trial court may exclude neither the media nor those spectators who have a direct interest in the case steer it clear of any constitutional infirmity.

In the present case, although the trial court might have more definitively stated its basis for excluding the alleged friends and relatives of defendant while H.B. testified, we hold that the record sufficiently supports the court's decision to clear the courtroom. The trauma inextricably connected with a child's testifying about being

the victim of sexual misconduct—here, H.B. testified about her grandfather's fondling of her vagina under her clothing—gives rise to an overriding interest to reduce that trauma whenever possible, such as by excluding from the courtroom those persons who have no direct interest in the case and whose presence may amount to little more than voyeurism.

In the present case, before the court entered the order that apparently excluded all spectators from the courtroom (mainly defendant's collateral relatives and neighbors), the court expressly asked defendant whether any spectators were members of his immediate family—persons who presumably would have a direct interest in the outcome of the case. At that point, the burden shifted to defendant to specifically identify each spectator that he wished to exempt from the closure order and to define the interest of each. Defendant's doing so would have given the court the opportunity to tailor the closure order to ensure that it was no broader than necessary. However, here defendant's vague reference to his collateral kin, neighbors, and acquaintances made no distinction between those possibly having a direct interest in the proceeding and those who did not. Defendant's failure to provide the trial court with the information it requested waives this issue on appeal.

As we stated earlier, defendant also cites *Priola*, a decision of the Second District Appellate Court that held that the *Waller* criteria applied to section 115—11 of the Code. (*Priola*, 203 Ill. App. 3d at 419-20, 561 N.E.2d at 95-96.) The *Priola* court further found that the trial court did not comply with the *Waller* criteria because it neither made findings nor considered alternatives to closing the proceeding during testimony of the child victim of sexual assault. However, the *Priola* court also found that defendant had waived this issue on appeal by failing to object to closure at trial or to raise the issue by post-trial motion. (*Priola*, 203 Ill. App. 3d at 420, 561 N.E.2d at 96.) For the reasons stated earlier, we decline to follow the *Priola* court's holding that the *Waller* criteria apply to section 115—11 of the Code.

## II. THE ORDER OF RESTITUTION

At the sentencing hearing, the State asked the court to order defendant to pay restitution for counseling sessions for H.B. The State indicated that $868 had already been paid for such counseling and that future counseling sessions might be necessary. In making this request, the State conceded that the victim's family had not responded to a recent request for information on additional expenditures. Nonetheless, the court ordered defendant to pay restitution of

$868 and an additional sum of up to $2,304 for future counseling. The court calculated this latter sum to be the cost of twice-monthly counseling sessions for an additional 12-month period if the victim should continue to require them.

Defendant argues the trial court erroneously ordered him to pay $2,304 for prospective counseling expenses, arguing that the court improperly speculated about the cost of future counseling sessions for H.B. Citing *People v. White* (1985), 135 Ill. App. 3d 563, 482 N.E.2d 134, defendant maintains that this court must vacate the restitution order. We disagree.

In *White,* the record contained no evidence regarding medical expenses to support the restitution order, contrary to section 5—5—6 of the Unified Code of Corrections (Unified Code) (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—6). On appeal, the State conceded that remandment for a hearing on the amount and manner of payment was necessary. *White,* 135 Ill. App. 3d at 565-66, 482 N.E.2d at 135-36.

Contrary to defendant's assertion, nothing in *White* prohibits inclusion in a restitution order of expenses incurred for prospective psychological counseling of the victim of a sexual offense. This court has previously found that section 5—5—6(g) of the Unified Code (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—6(g)) permits a restitution order for such prospective expenses when the court specifies a maximum dollar limit and time frame for completing counseling in the restitution order. See *People v. Strebin* (1991), 209 Ill. App. 3d 1078, 1082, 568 N.E.2d 420, 423.

We do not view the trial court's order here as speculative because it set both a ceiling on the amount of additional restitution which defendant might have to pay and a time frame in which therapy might be completed. The order specified restitution of "up to" $2,304, based on twice-monthly counseling sessions for an additional 12 months if the victim needed to continue therapy. We find this order complied with section 5—5—6 of the Unified Code and was not an abuse of discretion.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of conviction and the order of restitution.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.