THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRED-DIE FALASTER, Defendant-Appellant.

Fifth District    No. 5—94—0284

Opinion filed July 27, 1995.

Bruce D. Stewart, of Stewart, Lambert & Beggs, of Harrisburg, for appellant.

Michael Wepsiec, State's Attorney, of Murphysboro (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

A jury found defendant guilty of two counts of aggravated criminal sexual assault, one count of criminal sexual assault charges, and one count of distribution of harmful material. The alleged victim was defendant's minor daughter, "AF." Defendant was sentenced to concurrent terms of imprisonment of 15 years for each of the aggravated criminal sexual assault charges, five years on the conviction of criminal sexual assault, and 364 days on the conviction of unlawful distribution of harmful material.

Defendant raises four arguments: (1) the trial court denied defendant his right to a public trial by excluding members of the public during AF's testimony; (2) the trial court prejudiced defendant by admitting hearsay testimony of a nurse who interviewed AF; (3) the trial court erred by asking the State's rebuttal expert a question; and (4) the trial court erred by not instructing the jury that the judge's questioning of the State's expert was not a reflection of the judge's opinion of the credibility of the expert or her testimony. We affirm.

The first issue on appeal is whether defendant's right to a public trial was denied when the trial court partially closed the courtroom during AF's testimony. The objective of a criminal proceeding is to try the accused in a fair manner. (*People v. Holveck* (1990), 141 Ill. 2d 84, 100, 565 N.E.2d 919, 926.) The sixth amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a *** public trial ***." (U.S. Const., amend. VI.) Similarly, article I, section 8, of the Illinois Constitution provides: "In criminal prosecutions, the accused shall have the right *** to a speedy public trial ***." (Ill. Const. 1970, art. I, § 8.) However, there is no absolute right of public access to criminal trials. *Holveck*, 141 Ill. 2d at 100, 565 N.E.2d at 926.

In this case, the court's closure order was based on section 115—11 of the Illinois Code of Criminal Procedure of 1963 (Code), which states:

> "In a prosecution for a criminal offense *** where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." (725 ILCS 5/115—11 (West 1992).)

Defendant contends that he was denied his constitutional right to a public trial because the trial judge ordered two of defendant's nephews, and the grandfather of one of those nephews, to leave the courtroom while AF testified. The State argues that this issue was waived by defendant's failure to raise it in his post-trial motion. Defendant argues that the public trial issue is not waived because it is

constitutional in nature and could have been raised later in a post-conviction petition.

Generally, an issue which is not included in a post-trial motion is waived. (*People v. Friesland* (1985), 109 Ill. 2d 369, 374-75, 488 N.E.2d 261, 262.) An exception exists, however, for constitutional issues which have been raised at trial and which can be raised later in a post-conviction petition (725 ILCS 5/122—1 (West 1992)). (*People v. Johnson* (1991), 214 Ill. App. 3d 1087, 1090, 574 N.E.2d 225, 226.) We find that defendant's actions fall under this exception. Although defendant did not raise the issue in his post-trial motion, he did object to the court's exclusion of two of his nephews, and the grandfather of one of those nephews, from the courtroom during AF's testimony.

■ Since this issue was not waived, we must address whether the court erred in partially closing the courtroom during AF's testimony. The State filed a motion to exclude persons from the trial during 13-year-old AF's testimony. During a motion hearing, defense counsel stated that the defendant had no objection to excluding the public at large during AF's testimony. However, defense counsel asked the court to allow defendant's immediate family, namely, defendant's mother, his brother, and his two sisters, to remain in the courtroom.

The court cited two recent cases on the issue (725 ILCS 5/115—11 (West 1992)) (*People v. Leggans* (1993), 253 Ill. App. 3d 724, 625 N.E.2d 1133; *People v. Benson* (1993), 251 Ill. App. 3d 144, 621 N.E.2d 981) and identified three limitations on its authority under the statute to exclude persons from the courtroom during a minor victim's testimony: (1) it could not exclude the media; (2) it could not exclude persons having a direct interest in the case, such as the defendant's immediate family; and (3) its authority to exclude the public extended only to cases in which the victim was under age 18.

By stating that there were three limitations on its authority, the trial court obviously adopted the analysis of the fourth district in *Benson*, which held:

> "We hold that because section 115—11 of the Code permits only *limited* closure of trial court proceedings, that section does not violate (or even implicate) any State or Federal constitutional provisions. We further hold that the criteria discussed by the United States Supreme Court in *Press-Enterprise* [*Co. v. Superior Court* (1984), 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819,] and *Waller* [*v. Georgia* (1984), 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210,] do not apply to closures ordered pursuant to section 115—11 of the Code." (Emphasis added.) *People v. Benson* (1993), 251 Ill. App. 3d 144, 149, 621 N.E.2d 981, 984.

It is not clear that the fifth district has adopted the *Benson* rationale. In *People v. Leggans* (1993), 253 Ill. App. 3d 724, 625 N.E.2d 1133, the fifth district cited *Benson*, but it also referred to the protections afforded under *Waller v. Georgia* (1984), 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210, and the holding of *Press-Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819, which are generally accepted as requiring a four-part test:

> "Under *Press-Enterprise,* [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Waller,* 467 U.S. at 48, 81 L. Ed. 2d at 39, 104 S. Ct. at 2216.

Although the fourth district has rejected the application of *Waller* to section 115—11 and cites the Illinois Supreme Court's opinion in *People v. Holveck* (1990), 141 Ill. 2d 84, 565 N.E.2d 919, the second district, in *People v. Taylor* (1993), 244 Ill. App. 3d 460, 612 N.E.2d 543, also relies upon *Holveck* and reaches the opposite conclusion. See also *People v. Ramey* (1992), 237 Ill. App. 3d 1001, 606 N.E.2d 39; *People v. Garrett* (1994), 264 Ill. App. 3d 1089, 637 N.E.2d 615; *People v. Priola* (1990), 203 Ill. App. 3d 401, 561 N.E.2d 82; *People v. Morgan* (1987), 152 Ill. App. 3d 97, 504 N.E.2d 172.

The supreme court may ultimately resolve the clear split in authority between the fourth and the second districts, a resolution that is beyond our authority. We conclude that under either analysis, the trial court did not commit reversible error in its decision to exclude defendant's family. If we apply the three-point *Benson* analysis, it is clear that the trial court did not exclude the media and that the witness involved was under 18. The only remaining issue under that analysis is whether the excluded persons had a direct interest in the case. We hold that the trial court's ruling that the two nephews, and one of their grandfathers, did not have a direct interest was not an abuse of discretion.

Turning to the four-point *Waller* analysis, we again conclude that the trial court did not err. The first point, "an overriding interest that is likely to be prejudiced," is clearly present when a young victim of sexual abuse is required to relate the acts perpetrated upon her. We note that the fourth point, making "findings adequate to support the closure," was not specifically done, but it seems to us that such a finding is superfluous in this type of case; it is apparent from the circumstances.

The second and third *Waller* points were complied with; the court considered alternative proposals, and its order excluded only three

relatively distantly related individuals. We conclude that their exclusion was not an abuse of discretion.

The second issue to be addressed is whether the hearsay testimony of the nurse who interviewed AF should have been admitted. Defendant argues that he was prejudiced when the State elicited from the nurse statements that AF made to her about the sexual abuse.

The State asked Nurse Mary Williams what AF had told her while she was taking AF's medical history. Defense counsel objected generally on the grounds of hearsay, and the objection was overruled. The State argues that defendant waived his objection to the hearsay testimony of Nurse Williams by cross-examining her and by failing to specifically argue that section 115—13 of the Code was inapplicable.

■ We find that defendant did not waive his right to appeal this issue. To preserve error, a defendant need only object during the course of the trial and raise the issue in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Defendant did both in this case. The fact that defense counsel cross-examined Nurse Williams after his hearsay objection was overruled is of little consequence.

The State further argues that this issue was waived because defendant failed to specifically argue that section 115—13 of the Code was inapplicable. This argument also fails.

Section 115—13 of the Code provides a hearsay exception for statements made by victims of sex offenses to medical personnel:

> "In a prosecution for violation of *** the 'Criminal Code of 1961,' statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." 725 ILCS 5/115—13 (West 1992).

Section 115—13 is by definition an exception to the hearsay rule. (725 ILCS 5/115—13 (West 1992).) Defense counsel objected to Nurse Williams' testimony on the general grounds of hearsay. The State could argue that the statement came under the statutory exception of section 115—13, but it would be the State, not the defendant, that would raise the exception. The defendant is not required to initially argue that the hearsay objection did not fall under the hearsay exception found in section 115—13.

■ Since we conclude that this issue is properly before this court, we examine the substance of the issue. The issue of whether defendant was prejudiced by Nurse Williams' testimony focuses on what constitutes statements made for the "purposes of medical diagnosis or treatment." (725 ILCS 5/115—13 (West 1992).) Defendant argues that AF did not go to the doctor's office, where Nurse Williams worked, for "medical diagnosis or treatment," but rather to bolster the State's case at trial. Therefore, defendant argues, Nurse Williams' testimony did not fall under the section 115—13 hearsay exception and should have been excluded. The State argues that section 115—13's reference to "medical diagnosis or treatment" establishes the legislature's intent to apply the provision broadly, rather than to limit it to treating physicians only. The State's interpretation would include medical personnel attempting to diagnose whether, and in what manner, sexual abuse occurred.

We examined this issue in *People v. Mitchell* (1990), 200 Ill. App. 3d 969, 558 N.E.2d 559. The defendant in *Mitchell* argued that statements made by the victim to a doctor exceeded the statutory hearsay exception. (*Mitchell*, 200 Ill. App. 3d at 976, 558 N.E.2d at 564.) We agreed that testimony about statements made by the assailant as he entered the victim's apartment (that if she would not go out with him he would take what he wanted) and after the attack (that the assailant demanded money from the victim) were not "reasonably pertinent to diagnosis or treatment." *Mitchell*, 200 Ill. App. 3d at 976, 558 N.E.2d at 564.

We find that the facts in *Mitchell* differ from the facts here. The hearsay testimony at issue in *Mitchell* involved statements made by the defendant before and after the attack and were not related to the attack. In contrast, while her history was being taken by Nurse Williams, AF relayed specific information about the acts of sexual abuse suffered by her. Specifically, AF relayed that both oral and sexual abuse occurred, that there was never any bleeding, that the abuse occurred whenever there was an opportunity, and that she could not put a number on how often the sexual abuse occurred. AF's statements were made to Nurse Williams to assist in the doctor's ultimate diagnosis as to whether sexual abuse occurred and how AF's trauma should be treated. Consequently, such testimony was admissible under section 115—13. *People v. Morgan* (1994), 259 Ill. App. 3d 770, 631 N.E.2d 1224.

Applying the "reasonably pertinent" standard in *Mitchell* to the facts of this case, we hold that the information Nurse Williams gathered while taking AF's history about the nature of the sexual abuse differed from the extraneous information about the attacker found in *Mitchell* and was reasonably pertinent to the doctor's diag-

nosis or treatment. *People v. Morgan* (1994), 259 Ill. App. 3d 770, 631 N.E.2d 1224.

We also note that in *People v. Rushing* (1989), 192 Ill. App. 3d 444, 548 N.E.2d 788, the fourth district recognized that section 115—13 does not distinguish between examining and treating physicians:

> "The reference to diagnosis or treatment evinces a legislative intent to apply this provision broadly and not to limit the testimony only to treating physicians." *Rushing*, 192 Ill. App. 3d at 453, 548 N.E.2d at 793.

Defendant argues that even if AF's statements describing the "how, when, and where's" of the sexual abuse were properly admitted, it was improper to allow testimony relating AF's statements identifying defendant as the perpetrator. During her history, AF told Nurse Williams that her father, the defendant, was the person who had been sexually abusing her since she was eight years old.

We have never specifically addressed the issue of whether the hearsay identification of the perpetrator, conveyed by a victim during a history, fits within the section 115—13 hearsay exception. Other districts of the Illinois Appellate Court have addressed this issue, with mixed conclusions.

Some cases have held that the hearsay identification of the defendant falls within the section 115—13 exception. (See *People v. March* (4th Dist. 1993), 250 Ill. App. 3d 1062, 620 N.E.2d 424; *People v. Park* (2d Dist. 1993), 245 Ill. App. 3d 994, 615 N.E.2d 753; *People v. Roy* (4th Dist. 1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208.) Other cases agree that the victim's identification of the defendant as the perpetrator falls within the section 115—13 exception, but they have more limited holdings. (*People v. Morgan* (1st Dist. 2d Div. 1994), 259 Ill. App. 3d 770, 631 N.E.2d 1224 (identity of the perpetrator is admissible under the statute when the perpetrator is a family member); *People v. Stevens* (1st Dist. 3d Div. 1992), 255 Ill. App. 3d 812, 629 N.E.2d 518 (identity of the perpetrator is admissible when minor victim told her treating doctor that defendant forced her into two acts of vaginal intercourse).) Other cases have held that section 115—13 allows information about the attack but does not permit relation of the identity of the perpetrator. See *People v. Hall* (1st Dist. 3d Div. 1992), 235 Ill. App. 3d 418, 601 N.E.2d 883; *People v. Perkins* (1st Dist. 2d Div. 1991), 216 Ill. App. 3d 389, 576 N.E.2d 355; *People v. Hudson* (1st Dist. 6th Div. 1990), 198 Ill. App. 3d 915, 556 N.E.2d 640.

*United States v. Renville* (8th Cir. 1985), 779 F.2d 430, examined a similar issue under Rule 803(4) of the Federal Rules of Evidence. Rule 803(4), one of the exceptions to the hearsay rule, is substantially similar to section 115—13:

"The following are not excluded by the hearsay rule ***:

* * *

*** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4).

The victim in *Renville*, an 11-year-old child, told her treating physician that the defendant, her stepfather, had sexually abused her. The defendant in *Renville* argued that Rule 803(4) of the Federal Rules of Evidence does not allow statements of identity made to medical personnel. The advisory committee notes to Rule 803(4) conclude that statements of fault generally are not admissible under the rule. An example given in the notes includes, "a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." (Fed. R. Evid. 803(4), Advisory Committee's Note, at clxiv.) *Renville* concluded, however, that when a minor victim tells medical personnel that his or her sexual abuser is a member of the victim's immediate household, a different standard must apply:

"We believe that a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of rule 803(4) that it should not fall under the general rule. Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment *** [and] are reasonably relied on by a physician in treatment or diagnosis." (Emphasis omitted.) *United States v. Renville* (1985), 779 F.2d 430, 436-37.

■ We hold that the trial court correctly allowed Nurse Williams to testify about AF's out-of-court statement identifying defendant as the person who sexually abused her. Because of " 'special problems associated with intrafamily sexual abuse[,] *** the identity of the abuser is often an important element in diagnosing or treating the victim.' " (*People v. Morgan* (1994), 259 Ill. App. 3d 770, 781, 631 N.E.2d 1224, 1233, quoting *State v. Vosika* (1987), 83 Or. App. 298, 304, 731 P.2d 449, 452.) Here, AF's identification of defendant was reasonably pertinent to a proper diagnosis because defendant is AF's father. Defendant was living with AF while the sexual abuse occurred. AF's physical and emotional health, now and in the future, will be affected by her relationship with defendant. Defendant is not a stranger whom AF will never see again; he is her father. That

fact was significant in diagnosing or treating AF at the time of the abuse and will remain an important fact for future treatment.

One final note on this point. This is not a case like *People v. March* (1993), 250 Ill. App. 3d 1062, 620 N.E.2d 424, where the sex-abuse victim's identification of the perpetrator was initially ambiguous. In *March*, the two-year-old victim repeatedly stated that "Scott touched me down there," while pointing to her vaginal area. (*March*, 250 Ill. App. 3d 1062, 620 N.E.2d 424.) The ambiguity arose in the fact that the victim knew three people named "Scott." *March* affirmed defendant's conviction after finding that while the victim knew more than one person named "Scott," she only referred to one of them as Scott, the others being called "Scotty" and "Darren." *March*, 250 Ill. App. 3d at 1064, 620 N.E.2d at 427.

The third issue is whether the trial judge's questioning of the State's rebuttal witness prejudiced defendant by bolstering the witness's credibility. Generally, a judge has discretion to question witnesses in order to elicit truth or clarify issues. (*People v. Nevitt* (1990), 135 Ill. 2d 423, 456, 553 N.E.2d 368, 381.) The appropriateness of each examination depends on the circumstances of each case and falls within the discretion of the trial judge. (*Nevitt*, 135 Ill. 2d at 456, 553 N.E.2d at 381.) However, a judge's discretion is not unlimited. (*Nevitt*, 135 Ill. 2d at 456, 553 N.E.2d at 381.) A judge must be fair and impartial. (*Nevitt*, 135 Ill. 2d at 456, 553 N.E.2d at 381.) In a criminal trial, it is inappropriate for judges to convey opinions about questions of fact, the credibility of witnesses, and the weight of their testimony. *People v. Mays* (1989), 188 Ill. App. 3d 974, 983, 544 N.E.2d 1264, 1270.

In this case, the judge questioned two witnesses during the trial. Defendant does not object to the question posed to Nurse Williams about the purpose of taking a patient's history. Defendant focuses instead on the judge's question posed to the State's rebuttal witness, Dr. Virginia Hoffman, the last witness of the case.

Dr. Hoffman, a clinical psychologist with special training and extensive experience in working with child sexual abuse victims, was questioned by the State about child sexual abuse accommodation syndrome. Dr. Hoffman explained that the syndrome entails a description of coping behaviors that children use to withstand, to endure, and to cope with sexual abuse. After Dr. Hoffman's direct examination, cross-examination, and redirect examination, the court asked the expert witness a question about her testimony:

> "THE COURT: I have a question, Doctor. Let's talk about disclosure. Would you expect in a situation such as a 13-year-old who is allegedly the victim of sex abuse to be more inaccurate in her initial disclosure as opposed to later disclosures?

THE WITNESS: Yes, very much. It is like the car accident example I gave.

THE COURT: Well, that's the reason I asked the question. Thank you."

Defendant argues that the court's questioning of Dr. Hoffman prejudiced defendant by supporting the State's argument that AF's testimony was credible and rejecting defendant's argument that AF was falsifying her claims that her father sexually abused her.

■ A judge must exercise a high degree of care to avoid influencing the jury, because juries are easily influenced by a judge's opinion. (*People v. Brown* (1990), 200 Ill. App. 3d 566, 576, 558 N.E.2d 309, 315-16.) The record shows that Dr. Hoffman had already answered the judge's question during the course of her examination by the State. In other words, the testimony was cumulative. The court's question allowed her to repeat her belief that it was not unusual for a child to recall information about a trauma in bits and pieces, rather than all at once.

Since the testimony elicited by the court's question had already been presented to the jury through the State's questions, the defendant was not harmed by its repetition. Nevertheless, the questioning would have been better left undone. The question was obviously unnecessary; the information had already been elicited. Therefore, at a minimum, it was a waste of time. At a maximum, such questions can rise to the level of reversible error. (*People v. Peeples* (1993), 155 Ill. 2d 422, 616 N.E.2d 294; *People v. Rush* (1993), 250 Ill. App. 3d 530, 620 N.E.2d 1262.) In the intermediate range, questions from the court invariably lead at least one of the parties to the case to feel that the judge is unfairly favoring the opponent, whether any such favoritism was intended or not. In addition, such questions often form the basis for appeals (*People v. Brown* (1990), 200 Ill. App. 3d 566, 558 N.E.2d 309; *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516), and whether they are successful or not, they consume judicial resources. Therefore, questions from the bench should be sparingly employed.

Under other judicial systems, such as the inquisitorial systems employed in many European countries, judges take an active role in the questioning of witnesses. Under our adversarial system, counsel perform that function, and courts are generally well advised to refrain from interfering. It is the responsibility of counsel, not the court, to bring the relevant information to the jury in an appropriate manner, and any time a judge intervenes in that process it is likely to be viewed by the parties as an unwarranted interference, and it may be viewed as reversible error by an appellate court.

The latter conclusion is not warranted in this case. Although the question was unnecessary, we do not think that the judge's question rose to the level of giving an opinion about determinations of fact, the credibility of witnesses, and the weight of their testimony. (*People v. Mays* (1989), 188 Ill. App. 3d 974, 983, 544 N.E.2d 1264, 1270.) Therefore, we conclude that the judge's question does not warrant reversal. *People v. Hopkins* (1963), 29 Ill. 2d 260, 194 N.E.2d 213.

■ Defendant's final argument is that the trial court erred by not immediately admonishing the jury that the court's questioning of Dr. Hoffman was not a reflection of the court's opinion of the credibility of the expert or her testimony. The record reveals that defendant did not request an immediate admonition at the time the question was posed to Dr. Hoffman. The court instructed the jury with Illinois Pattern Jury Instructions, Criminal, No. 1.01 (3d ed. 1992), which includes the admonishment, "Neither by these instructions nor by any ruling or remark which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be." Through this instruction, the court informed the jury that its question of Dr. Hoffman was not to be viewed as support for her testimony.

For the foregoing reasons, we affirm.

Affirmed.

MAAG, P.J., and LEWIS, J., concur.