NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of

the opinion to request a rehearing. Also, opinions are subject to

modification, correction or withdrawal at anytime prior to issuance of the

mandate by the Clerk of the Court. Therefore, because the following slip

opinion is being made available prior to the Court's final action in this

matter, it cannot be considered the final decision of the Court. The official

copy of the following opinion will be published by the Supreme Court's

Reporter of Decisions in the Official Reports advance sheets following final

action by the Court.

                                       

                   Docket No. 79571--Agenda 6--March 1996.

     THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FREDDIE FALASTER,

                                  Appellant.

                                       

                         Opinion filed May 31, 1996.

                                       

          JUSTICE MILLER delivered the opinion of the court:

          Following a jury trial in the circuit court of Jackson County, the

defendant, Freddie Falaster, was convicted of two counts of aggravated

criminal sexual assault, one count of criminal sexual assault, and one count

of unlawful distribution of harmful material. The trial judge sentenced the

defendant to various terms of imprisonment for those offenses. The appellate

court affirmed the defendant's convictions and sentences. 273 Ill. App. 3d

694. We allowed the defendant's petition for leave to appeal (155 Ill. 2d R.

315(a)), and we now affirm the judgment of the appellate court.

          The defendant makes no challenge to the strength of the evidence

used to convict him on the charges, and therefore only a brief summary of the

trial testimony is necessary. The victim in this case, A.F., was the

defendant's daughter. According to the testimony of the victim, who was 14

years old at the time of the defendant's trial, in 1994, the defendant began

sexually abusing her when she was eight or nine years old; the abuse lasted

until June or July 1993, when the victim reported it to the authorities. The

victim stated that the defendant initially asked her masturbate him or

perform fellatio on him; later, the defendant told her to engage in sexual

intercourse. The victim testified to specific instances in which she had

intercourse with the defendant. The victim also said that the defendant had

given her a nude photograph of himself and a pornographic magazine called

Three Way Lust.

          At trial, the State also presented the testimony of Mary Williams,

a registered nurse who obtained a history from the victim prior to a physical

examination in August 1993. Williams testified that the victim reported that

she had been sexually abused by the defendant since she was eight years old,

that oral and vaginal sex had occurred, and that she had never bled as a

result of that activity. Williams stated that the absence of bleeding was not

unusual.

          The defendant was questioned by authorities following the victim's

report of the misconduct, and the defendant's statements were introduced into

evidence at his trial. The defendant admitted to a police officer and an

investigator from the Department of Children and Family Services (DCFS) that

he had sexually abused the victim. The defendant said that he had directed

his daughter to participate in masturbation, fellatio, and intercourse with

him over a period of several years. The defendant initially said that they

had sexual relations once or twice, then estimated that it occurred two or

three times a week, and finally said that he could not be certain how many

times the conduct had occurred.

          The State also presented physical evidence corroborating the

victim's account. A forensic serologist was able to detect deposits of semen

on the carpet next to the bed in the master bedroom where, the victim said,

the defendant would often ejaculate when they engaged in sexual activity. The

serologist determined that the semen stains were consistent with the

defendant's blood type. In addition, a police officer testified that the nude

photograph and pornographic magazine given by the defendant to the victim

were recovered from a trunk in the victim's bedroom, where she said she had

kept the items.

          The defendant testified in his own behalf at trial. He denied

engaging in sexual activity with the victim or giving her the photograph and

magazine. The defendant acknowledged that he had been questioned by a police

officer and a DCFS investigator following the victim's report of the abuse,

but he denied making the inculpatory statements they attributed to him.

Called to testify as a defense witness at trial was Dr. Deanna St. Germaine,

the physician who performed the physical examination of the victim in August

1993. Dr. St. Germaine stated that she did not find any physical evidence of

sexual abuse. She also testified, however, that because of the victim's age

and physical development, it would be unusual to find such evidence unless

the abuse had been forceful.

          Following the close of evidence, the jury returned verdicts finding

the defendant guilty of two counts of aggravated criminal sexual assault, one

count of criminal sexual assault, and one count of unlawful distribution of

harmful material. The trial judge later sentenced the defendant to terms of

15 years' imprisonment on each conviction for aggravated criminal sexual

assault, to five years' imprisonment for the conviction for criminal sexual

assault, and to 364 days' imprisonment for the conviction for unlawful

distribution of harmful material, with all four sentences to run

concurrently. The judge also ordered the defendant to pay two fines of $100

each pursuant to sections 5--9--1.5 and 5--9--1.7 of the Unified Code of

Corrections (730 ILCS 5/5--9--1.5, 5--9--1.7 (West 1994)), and to pay $2,000

toward counseling costs incurred by the victim, as authorized by section 5--

5--6(g) of the Unified Code of Corrections (730 ILCS 5/5--5--6(g) (West

1992)).

          The appellate court affirmed the defendant's convictions and

sentences. 273 Ill. App. 3d 694. The court rejected the defendant's arguments

that the trial judge improperly excluded several spectators from a portion of

the proceedings, that the judge erred in permitting nurse Williams to testify

to the victim's identification of the defendant as her abuser, and that the

judge erred in asking a question of a prosecution witness. We allowed the

defendant's petition for leave to appeal (155 Ill. 2d R. 315(a)), and we now

affirm the judgment of the appellate court.

          The defendant renews here the three allegations of error he raised

in the appellate court. The defendant first contends that the trial judge

improperly excluded certain spectators from the courtroom during the

testimony of the victim. The persons excluded from the courtroom by the

judge's order were two nephews of the defendant and the grandfather of one of

the nephews. In granting the State's request that the persons be excluded,

the judge invoked section 115--11 of the Code of Criminal Procedure of 1963

(725 ILCS 5/115--11 (West 1992)), which permits the exclusion of certain

spectators from the court during testimony of a minor victim in specified

prosecutions.

          The defendant argues that this partial closure of the proceedings

during the victim's testimony violated his federal and state constitutional

rights to a public trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970,

art. I, §8. Citing Waller v. Georgia, 467 U.S. 39, 81 L. Ed. 2d 31, 104 S.

Ct. 2210 (1984), Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 78 L.

Ed. 2d 629, 104 S. Ct. 819 (1984), and Globe Newspaper Co. v. Superior Court,

457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982), the defendant

contends that the exclusion order imposed in the present case failed to

satisfy the limitations prescribed by the United States Supreme Court for the

closing of judicial proceedings. Those cases severely limit the circumstances

in which a judge may bar the press and general public from judicial

proceedings. Although the defendant failed to include this contention in his

post-trial motion, we will address the merits of the issue, given the general

importance of the question and the division of appellate court authority on

the subject. See Hux v. Raben, 38 Ill. 2d 223 (1967).

          In excluding the three spectators from the courtroom in the present

case, the trial judge relied on section 115--11 of the Code of Criminal

Procedure of 1963, which provided, at the time of trial:

                    "In a prosecution for a criminal offense defined in

               Article 11 or in Section 12--13, 12--14, 12--15 or 12--16 of

               the `Criminal Code of 1961', where the alleged victim of the

               offense is a minor under 18 years of age, the court may

               exclude from the proceedings while the victim is testifying,

               all persons, who, in the opinion of the court, do not have a

               direct interest in the case, except the media." 725 ILCS

               5/115--11 (West 1992).

The statute was applicable to the proceedings in this case, for the defendant

was charged with criminal sexual assault and aggravated criminal sexual

assault, violations of sections 12--13 and 12--14 of the Criminal Code of

1961 (720 ILCS 5/12--13, 12--14 (West 1992)), and the victim of the offenses

was under the age of 18.

          The defendant argues that the trial judge's order excluding

spectators from the proceeding must satisfy not only the requirements of

section 115--11 but also the more stringent limitations established by the

United States Supreme Court for the closure of judicial proceedings to the

press and public. The State contends that the order entered in the present

case was valid if it met the statutory requirements alone. Both parties cite

People v. Holveck, 141 Ill. 2d 84 (1990), in support of their respective

arguments. We note that the decisions of the appellate court are divided on

this issue. Compare People v. Garrett, 264 Ill. App. 3d 1089 (1994)

(exclusion order imposed under section 115--11 must also satisfy more

stringent requirements limiting closure of judicial proceedings), with People

v. Benson, 251 Ill. App. 3d 144 (1993) (exclusion order imposed under section

115--11 must satisfy only requirements of statute). We agree with the State

that the trial judge's order here needed to satisfy only the requirements of

section 115--11.

          Although Holveck, a case involving an order excluding spectators

pursuant to section 115--11, contains a discussion of the Supreme Court's

requirements concerning the closure of judicial proceedings to the press and

public, we do not believe that the opinion should be construed as imposing

those requirements in cases in which an order is entered pursuant to the

statute. The court observed that, "[b]y allowing the media to attend, the

judge preserved the defendant's sixth amendment right to a public trial. The

trial judge considered that the media presence is, in effect, the presence of

the public." Holveck, 141 Ill. 2d at 101. The court proceeded to reject the

defendant's argument that section 115--11 was unconstitutional because, among

other things, it denied the defendant his right to a public trial. Discussing

the provisions of section 115--11, the Holveck court explained:

               "The statute provides that the judge may use his discretion in

               connection with the exclusion of those persons who, in his

               opinion, are not directly interested in the case. Unlike the

               statute in Globe Newspaper Co. v. Superior Court (1982), 457

               U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (statute excluded

               the press and the general public), our statute is limited to

               discretionary closure in a criminal trial and does not allow

               the media to be excluded. Too, the statute provides guidelines

               to ensure that the judge does not overstep the authority

               conferred. The statute provides that closure can be effected

               only in the narrow instance when a minor is testifying and it

               will be limited to the time when the child is testifying. The

               trial court properly involved section 115--11, which does not

               violate the constitutions." Holveck, 141 Ill. 2d at 102-03.

          We agree with the State that the strict limitations prescribed by

the United States Supreme Court for instances in which the press and public

are barred from judicial proceedings are not applicable in this case. The

trial judge did not close the present defendant's trial; acting pursuant to

section 115--11 of the Code of Criminal Procedure, the judge instead ordered

the removal of several spectators from the courtroom during the testimony of

the 14-year-old victim. The persons who were temporarily excluded from the

proceedings were not members of the defendant's immediate family and thus did

not have a direct interest in the outcome of the case. The judge did not

impose any restrictions on the media, which were still allowed full and

uninhibited access to the proceedings; thus, none of the evils of closed

trials are implicated in the present case. Because section 115--11 is

constitutional (Holveck, 141 Ill. 2d 84) and because the trial judge in the

present case fully complied with its requirements, we must conclude that the

order excluding three spectators from the court during the victim's testimony

was valid.

          The defendant next argues that the trial judge erred in permitting

a witness to provide hearsay evidence of the victim's identification of the

defendant as her abuser. The issue arose during the testimony of Mary

Williams, a registered nurse in the office of Dr. St. Germaine, who conducted

an examination of the victim in late August 1993, following the victim's

report of the abuse to authorities. Prior to the doctor's examination, the

nurse obtained a history from the victim. Williams testified that the victim

described the sexual abuse and identified the defendant as the offender. The

defendant objected to this testimony on hearsay grounds. The State cited

section 115--13 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115--13

(West 1992)) in support of the witness' testimony, and the trial judge

overruled the defendant's objection.

          At the time of the defendant's trial, section 115--13 provided:

                    "In a prosecution for violation of Section 12--13, 12--

               14, 12--15 or 12--16 of the `Criminal Code of 1961',

               statements made by the victim to medical personnel for

               purposes of medical diagnosis or treatment including

               descriptions of the cause of symptom, pain or sensations, or

               the inception or general character of the cause or external

               source thereof insofar as reasonably pertinent to diagnosis or

               treatment shall be admitted as an exception to the hearsay

               rule."

The present defendant was being tried for criminal sexual assault and

aggravated criminal sexual assault, violations of sections 12--13 and 12--14

of the Criminal Code of 1961 (720 ILCS 5/12--13, 12--14 (West 1992)). The

statute is a narrow codification of the common law rule permitting the

hearsay use of information revealed in medical treatment. See People v. Roy,

201 Ill. App. 3d 166, 179 (1990).

          The defendant contends that section 115--13 is inapplicable in this

case and did not authorize the hearsay use of the nurse's testimony because

the victim was not at the doctor's office "for purposes of medical diagnosis

or treatment," as the statute requires; in the defendant's view, the victim

underwent the examination solely as a means of developing evidence for use in

a subsequent prosecution. We do not agree with the defendant that the

diagnostic purpose of the examination would be incompatible with its

investigatory function. We note, moreover, that the statute does not

distinguish between examining physicians and treating physicians. See Roy,

201 Ill. App. 3d at 178; People v. Rushing, 192 Ill. App. 3d 444, 453 (1989).

We conclude that the examination conducted in the present case was for a

purpose within the scope of the statute.

          The defendant separately contends that section 115--13 did not

authorize the nurse to testify to the victim's identification of the offender

because the identification was irrelevant to the victim's diagnosis and

treatment. See People v. Hall, 235 Ill. App. 3d 418, 435 (1992); People v.

Hudson, 198 Ill. App. 3d 915, 922 (1990); see also M. Graham, Cleary &

Graham's Handbook of Illinois Evidence §803.8, at 722 (6th ed. 1994). We must

reject this contention as well. We believe that, at least in the family

setting, a victim's identification of a family member as the offender is

closely related to the victim's diagnosis and treatment in cases involving

allegations of sexual abuse, and thus we agree with those decisions that have

permitted the admission of such hearsay evidence. People v. Morgan, 259 Ill.

App. 3d 770, 781-82 (1994); see also United States v. Renville, 779 F.2d 430,

437 (8th Cir. 1985) ("[C]hild abuse involves more than physical injury; the

physician must be attentive to treating the emotional and psychological

injuries which accompany this crime. [Citations.] The exact nature and extent

of the psychological problems which ensue from child abuse often depend on

the identity of the abuser"). As the appellate court below explained in

upholding the admission of the nurse's testimony:

               "Here, AF's identification of defendant was reasonably

               pertinent to a proper diagnosis because defendant is AF's

               father. Defendant was living with AF while the sexual abuse

               occurred. AF's physical and emotional health, now and in the

               future, will be affected by her relationship with defendant.

               Defendant is not a stranger whom AF will never see again, but

               he is her father. That fact was significant in diagnosing or

               treating AF at the time of the abuse and will remain an

               important fact for future treatment." 273 Ill. App. 3d at 702-

               03.

We believe that the nurse's testimony relating the minor's identification of

the defendant as the abuser was properly admitted under the terms of section

115--13.

          In his final allegation of error, the defendant argues that the

trial judge erred in asking a question of one of the prosecution's witnesses,

Dr. Virginia Hoffman. Testifying in rebuttal, Dr. Hoffman, a psychologist,

described the nature and characteristics of child sexual abuse accommodation

syndrome. In the course of her testimony, Dr. Hoffman drew an analogy to a

driver's recollection of an automobile accident. At first a driver will

generally provide only a few details of the accident; as time passes, the

driver will be more forthcoming and will reveal more information about the

mishap. At the conclusion of Dr. Hoffman's testimony, the following colloquy

ensued:

                    "THE COURT: I have a question, Doctor. Let's talk about

               disclosure. Would you expect in a situation such as a 13-year-

               old who is allegedly the victim of sex abuse to be more

               inaccurate in her initial disclosure as opposed to later

               disclosures?

                    THE WITNESS: Yes, very much. It is like the car accident

               example I gave.

                    THE COURT: Well, that's the reason I asked the question.

               Thank you."

The defendant notes that one of the principal issues at trial was the

credibility of the victim, and the defendant contends that the court's

question improperly bolstered the prosecution's argument that her testimony

was truthful.

          "A trial judge has the right to question witnesses in order to

elicit the truth or to bring enlightenment on material issues which seem

obscure." People v. Wesley, 18 Ill. 2d 138, 154-55 (1959). It is improper,

however, for the judge to assume the role of an advocate (People v. Hopkins,

29 Ill. 2d 260, 265 (1963); People v. Bernstein, 250 Ill. 63, 67 (1911)) or

to suggest through comments or questions an opinion regarding the facts of

the case or the credibility of witnesses (People v. Marino, 414 Ill. 445, 450

(1953)). The appropriate scope of questioning by the court depends on the

facts and circumstances of the case and lies largely within the trial judge's

discretion. People v. Williams, No. 76907, slip op. at 22 (May 31, 1996);

People v. Nevitt, 135 Ill. 2d 423, 456 (1990); People v. Trefonas, 9 Ill. 2d

92, 100 (1956).

          Applying these principles to the case at bar, we do not believe

that the trial judge abused his discretion in asking the question of the

witness. The brief inquiry helped clarify a matter that the judge, and

perhaps the jurors, too, found to be somewhat obscure. The judge did not

indicate by his question or his succeeding comments any view on the facts of

the case or the credibility of the witnesses. Moreover, the jurors received

the standard instruction directing them not to construe any of the judge's

rulings or remarks as an opinion on the facts or preferred verdict in the

case. Illinois Pattern Jury Instructions, Criminal, No. 1.01 (3d ed. 1992).

The cases cited by the defendant in support of this contention (People v.

Rush, 250 Ill. App. 3d 530 (1993); People v. Brown, 200 Ill. App. 3d 566

(1990); People v. Crane, 34 Ill. App. 3d 850 (1976)) are distinguishable. In

each of those cases, the trial judge breached the bounds of impartiality by

making remarks or asking questions that would have been construed by the jury

as an opinion on the credibility of a particular witness. The trial judge in

the present case, in contrast, did not comment on the strength of the

evidence or the credibility of witnesses. His single question merely

clarified a point that he believed had been left somewhat unclear by the

witness' testimony. We cannot say on this record that the trial judge abused

his discretion in asking the question of the witness.

          Finding no reversible error in the trial proceedings, we decline to

disturb the defendant's convictions or sentences. For the reasons stated, the

judgment of the appellate court, which affirmed the judgment of the circuit

court of Jackson County, is affirmed.

        

                                                            Judgment affirmed.

                                                                              

          JUSTICE HARRISON, specially concurring:

          Contrary to my colleagues, I would hold that the trial judge erred

in permitting nurse Williams to testify that the victim had identified

defendant as her abuser. Nurse Williams' testimony was plainly hearsay. As

such, it was admissible only to the extent that it fell within the hearsay

exception set forth in section 115--13 of the Code of Criminal Procedure of

1963 (725 ILCS 5/115--13 (West 1992)). That exception, however, cannot be

invoked here.

           Section 115--13 does authorize medical personnel to testify as to

statements made by a victim of sexual assault, but only when the statements

were made by the victim to the medical personnel "for purposes of medical

diagnosis or treatment." This is a codification of a common law rule (see

People v. Giles, 261 Ill. App. 3d 833, 841-42 (1994)) which was based on the

notion that an injured individual is presumed not to "prevaricate at the very

instant of his injury or while he is stating his physical condition to a

physician from whom he expects and hopes to receive medical aid" (Greinke v.

Chicago City Ry. Co., 234 Ill. 564, 572 (1908)).

          In this case, the challenged statement was not made at the time of

the victim's injury and had nothing to do with her "diagnosis and treatment."

Dr. St. Germaine was not the victim's physician, and the victim did not go to

her office because she needed help in identifying some medical condition so

that it could be cured. The victim was taken to Dr. St. Germaine's office,

accompanied by an assistant State's Attorney according to the doctor's

account, for the sole purpose of bolstering the State's case against the

defendant.

          No genuine medical purpose can reasonably be imputed to the

examination. By the time nurse Williams interviewed the victim in Dr. St.

Germaine's office, any physical trauma had long since healed. There was

nothing medically wrong with the victim, she had no physical symptoms

requiring treatment, and she did not claim that she needed to be treated. 

          The interview with nurse Williams was likewise unrelated to care of

the victim's mental health. While identification of the perpetrator is

undeniably important in dealing with the child's psychological condition,

there was no uncertainty as to who was responsible here. The victim had

already identified defendant as her abuser, he had already admitted the abuse

and the police had already arrested him for it. 

          Because the victim was examined for investigatory purposes and not

to obtain medical care, the presumption of trustworthiness underlying the

exception to the hearsay rule was absent and the statute, by its terms, did

not apply. To hold otherwise would mean that the State could evade the

prohibition against hearsay testimony in every child abuse case simply by

using licensed medical professionals to conduct their interrogations. In my

view, such a result was not intended by the legislature and represents a

radical and unwarranted departure from established principles of evidence.

          Although the circuit court should not have admitted nurse Williams'

hearsay testimony, I agree that the appellate court was correct in affirming

the circuit court's judgment. This court has held that reversal is mandatory

when the trial court has erroneously admitted evidence unless the record

clearly shows that the error was not prejudicial. People v. Lawler, 142 Ill.

2d 548, 562 (1991); People v. Carlson, 92 Ill. 2d 440, 449 (1982). I believe

that the record before us does clearly show that admission of nurse Williams'

testimony did not prejudice the defendant. As the majority's review of the

facts indicates, the properly admitted evidence was so overwhelming that no

fair-minded jury could reasonably have voted to acquit.

          JUSTICE McMORROW joins in this special concurrence.